STADTMUELLER

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

STEPHEN C. DRIES
U.S. MAGISTRATE JUDGE

**PHILLIP ALLEN CHAMPAGNE,**
**Plaintiff,**

**v.**

**PTG LIVE EVENTS, LLC, DBA PABST THEATER GROUP AND PABST THEATER FOUNDATION, INC.,**
**Defendant.**

**Case No.: 26-C 2017**

**COMPLAINT AND JURY DEMAND**

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED
2026 OCT 29 A 11: 18
CLERK OF COURT

## COMPLAINT AND JURY DEMAND

Plaintiff Phillip Allen Champagne, representing himself, alleges as follows for his Complaint against Defendant PTG Live Events, LLC, dba Pabst Theater Group and Pabst Theater Foundation, Inc.:

## INTRODUCTION

1. This is an action for declaratory, injunctive, and monetary relief brought pursuant to Title I and Title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., to redress unlawful employment discrimination on the basis of disability and unlawful retaliation against an employee for making protected disclosures and engaging in protected activity.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 12117, as this action arises under the laws of the United States.

3. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendant resides and operates in this judicial district and a substantial part of the events, acts, and omissions giving rise to the claims occurred within this district.

## PARTIES

4. Plaintiff Phillip Allen Champagne is an adult resident of the City of Milwaukee, State of Wisconsin, residing at 3286 North 15th Street, Milwaukee, Wisconsin 53206. At all times relevant, Plaintiff was an "employee" of Defendant as defined by 42 U.S.C. § 12111(4) and a qualified individual with a disability.

5. Defendant PTG Live Events, LLC, dba Pabst Theater Group and Pabst Theater Foundation, Inc., is a single unified commercial, philanthropic, and corporate enterprise operating in the State of Wisconsin, with administrative operations and venue addresses located at 710 N. Plankinton Ave., Suite 900, Milwaukee, WI 53203 and 144 E. Wells St., Milwaukee, WI 53202.

6. At all times relevant, Defendant operated as a single employer or integrated enterprise controlling all operational, logistical, administrative, and labor practices across its venue network.

7. At all times relevant, Defendant was an employer engaged in an industry affecting commerce and employed the requisite number of individuals to qualify as an employer under 42 U.S.C. § 12111(5).

## PROCEDURAL EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a formal charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") challenging the unlawful employment actions described herein.

9. The EEOC investigated the charge and issued a Notice of Right to Sue, which Plaintiff received within ninety (90) days of the filing of this Complaint. Consequently, Plaintiff has fully exhausted his administrative remedies.

## FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant and performed his job duties competently, meeting or exceeding all legitimate performance expectations.

11. Plaintiff is an individual with a disability or was regarded as having a physical or mental impairment by Defendant that substantially limits one or more major life activities.

12. On March 7th, 2025, Plaintiff experienced a mental health emergency outside of work that was completely unrelated to his job duties, which temporarily rendered him incapable of reporting to work for a brief duration of no more than one (1) week.

13. Following the disclosure of his condition or accommodation needs, Defendant placed Plaintiff on a forced, unrequested, and unpaid Independent Medical Examination ("IME") leave that lasted for a duration of 118 days.

14. During the implementation and intake process for this forced IME assessment, Defendant displayed multiple occurrences of bad-faith attempts to manipulate the process and create arbitrary administrative roadblocks. Defendant repeatedly changed the clinical goalposts and

engineered unnecessary paperwork requests, which effectively acted as an instrument and tool to weaponize the IME process and deliberately prolong the Plaintiff's return to active work.

15. Plaintiff repeatedly sought to return to his active work duties, but Defendant maintained the forced, unpaid leave despite a lack of legitimate, job-related medical necessity, and in spite of the Plaintiff's own medical professional providing a return-to-work notice listing that the Plaintiff had no work restrictions and could return to full duties.

16. Following the eventual completion of an assessment with a second IME provider—necessitated only because Defendant abruptly terminated the first intake process once it was already completed with the initial assessor—Plaintiff was finally permitted to return to work, with the singular clinical restriction of working no overtime for a period of two (2) months.

17. Upon his return to work, the intense stress environment generated by Defendant's adversarial procedures caused Plaintiff to begin experiencing stress-related seizure-like events. These events rendered him temporarily incapable of reporting to work on July 15th, 2025, on which date he had to be urgently hospitalized for an acute episode.

18. Following this emergency, Defendant structured a condition requiring that Plaintiff not return to work without receiving formal medical clearance via a physician's return-to-work slip that specified any necessary accommodations required for his reintegration.

19. On July 25th, 2025, Plaintiff participated in a follow-up appointment with his primary care physician regarding the emergency room hospitalization. During this evaluation, his medical provider issued an official work excuse slip backdated from July 15th, 2025, through September

1st, 2025, to protect his legal status while he awaited a critical diagnostic appointment with a neurology specialist to determine the precise etiology of the seizure-like events.

20. While on leave or shortly thereafter, Plaintiff made protected disclosures regarding his medical status, treatment, and his rights under the ADA to Defendant's management and human resources.

21. Within forty-eight (48) hours of Plaintiff making these protected disclosures, Defendant notified Plaintiff that his employment contract would not be renewed, effectively terminating his employment.

22. Within four (4) days of the protected disclosures, Defendant issued and instituted a total property ban against Plaintiff, barring him from entering all properties and venues operated by the enterprise without notice or justification.

23. The forced 118-day unpaid IME leave, the tactical manipulation of successive medical evaluations, the sudden 48-hour contract non-renewal, and the 4-day unnotified property ban were adverse employment actions taken directly because of Plaintiff's disability, perceived disability, and in direct retaliation for his protected activities and disclosures.

24. During the subsequent EEOC administrative investigation into these matters, Defendant actively misled the EEOC during a fact-finding conference and through written submissions regarding the notice of the property ban; specifically, when requested to verify the timeline and notification of the ban, Defendant provided an email to the EEOC that was either fabricated or otherwise highly misleading in order to manipulate the investigation to the favor of the employer and cover up its retaliatory actions.

**COUNT I: DISCRIMINATION IN VIOLATION OF THE ADA (TITLE I)**
**(Against Defendant)**

25. Plaintiff realleges and incorporates paragraphs 1 through 24 as if fully set forth herein.

26. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

27. Defendant was fully aware of Plaintiff's disability or regarded him as disabled.

28. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by forcing him onto an unjustified and unpaid 118-day IME leave, systematically weaponizing successive intake procedures to generate administrative delay, enforcing rigid conditions on his return during an emergency medical crisis, refusing to renew his contract, and banning him from enterprise properties.

29. Defendant's actions were taken because of Plaintiff's disability or perceived disability, in violation of 42 U.S.C. § 12112.

30. As a direct result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer economic loss, lost wages, emotional distress, inconvenience, and loss of enjoyment of life.

**COUNT II: RETALIATION IN VIOLATION OF THE ADA (TITLE V)**
**(Against Defendant)**

31. Plaintiff realleges and incorporates paragraphs 1 through 24 as if fully set forth herein.

32. Plaintiff engaged in protected activity under the ADA by requesting accommodations, opposing discriminatory practices, and making protected disclosures regarding his rights, medical leave status, and medical excuse timelines.

33. Shortly after learning of Plaintiff's protected activities, Defendant subjected him to severe adverse actions, including the 48-hour non-renewal of his contract and a total property ban within 4 days.

34. A clear causal connection exists between Plaintiff's protected disclosures and the adverse actions taken by Defendant.

35. Defendant's asserted reasons for these actions, if any, are a pretext for unlawful retaliation in violation of 42 U.S.C. § 12203, which is further evidenced by Defendant's subsequent efforts to submit fabricated or misleading email documentation to the EEOC to obscure the retaliatory nature of its timeline.

36. As a direct result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer financial injury, emotional distress, and professional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, granting the following relief:

- A declaratory judgment that Defendant's acts and practices complained of herein violate Title I and Title V of the Americans with Disabilities Act;
- A permanent injunction restraining Defendant, its officers, agents, and employees from continuing to leave in place policies and practices that discriminate or retaliate under the ADA, and lifting the property ban;
- An award of back pay, front pay, and lost benefits according to proof at trial;

• An award of compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

• An award of punitive damages for Defendant's malicious, willful, and reckless indifference to Plaintiff's federally protected rights;

• An award of reasonable attorneys' fees (if applicable) and all costs of this action; and

• Such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 29 day of October, 2026.

Respectfully submitted,

Phillip Allen Champagne, Plaintiff Pro Se

3286 North 15th Street

Milwaukee, Wisconsin 53206